UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RALPH ROMERO, )<br>)<br>Petitioner, )<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | CAUSE NO. 3:06-CV-821 RM<br>(Arising out of 3:03-CR-18(01) RM) |

OPINION and ORDER

On July 14, 2003, a jury convicted Ralph Romero of one count of conspiracy to distribute 100 kilograms or more of a mixture containing marijuana, five kilograms or more of a mixture containing detectable amounts of cocaine, and 500 grams or more of a mixture containing detectible amounts of methamphetamine, and eight counts of possession with intent to distribute varying amounts of marijuana, cocaine, and methamphetamine; the jury found him not guilty on five money laundering counts. At the November 25, 2003 sentencing hearing, the court concluded that Mr. Romero was responsible for between 110,545 and 400,000 kilograms of marijuana, possessed a firearm in connection with his drug trafficking, and had provided perjured testimony at his trial. Mr. Romero was sentenced to a total term of 420 months' imprisonment, to be followed by a five-year term of supervised release.

Mr. Romero appealed his sentence to the Seventh Circuit Court of Appeals and his case was remanded for the limited purpose of making the finding

contemplated by United States v. Paladino, 401 F.3d 471, 483-484 (7th Cir. 2005), namely whether the court, knowing that the federal sentencing guidelines are not mandatory, would (if required to resentence) reimpose the original sentence. *See* United States v. Romero, 131 Fed. Appx. 491, 2005 WL 902018 (7th Cir. Apr. 5, 2005). Counsel submitted briefs on the sentencing issues, a hearing was held on July 19, 2005, and the following day the court determined that it would indeed reimpose the original sentence if required to resentence. *See* Opinion on Limited Remand, dated July 20, 2003 [docket # 85]. Following the remand, the Seventh Circuit affirmed the 420-month sentence. *See* United States v. Romero, No. 03-4211, 2005 WL 1992533 (7th Cir. Aug. 18, 2005). The United States Supreme denied certiorari on December 12, 2005, Romero v. United States, 546 U.S. 1082 (2005), and denied Mr. Romero's petition for rehearing on April 24, 2006. Romero v. United States, 547 U.S. 1108 (2006).

On December 18, 2006, Mr. Romero filed a timely petition under 28 U.S.C. § 2255 seeking to have his sentence vacated, set aside, or corrected based on his claims that his trial counsel and his appellate counsel provided ineffective assistance and the government used perjured testimony at trial. The government has filed its response and Mr. Romero his reply. For the reasons that follow, the court denies Mr. Romero's request that his conviction and sentence be vacated.

I. Legal Standard

28 U.S.C. § 2255 allows a person convicted of a federal crime to attack his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Hence, relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation and citation omitted).

A petition under § 2255 will not be allowed to substitute for an appeal or to advance arguments that could have been made earlier. *See* Reed v. Farley, 512 U.S. 339, 354 (1994) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal." (*quoting* Sunal v. Large, 332 U.S. 174, 178 (1947))); Young v. United States, 124 F.3d 794, 796 (7th Cir. 1997) ("It is hornbook law that § 2255 cannot be used as a belated appeal."). A petitioner cannot bring constitutional claims he could have raised on direct appeal without showing good cause for and actual prejudice resulting from his failure to raise the claims on direct appeal. Reed v. Farley, 512 U.S. at 354. "[N]on-constitutional errors which could have been raised on appeal but were not, are barred on collateral review – regardless of cause and prejudice." Young v. United States, 124 F.3d at 796 (*quoting* Bontkowski v. United States, 850 F.2d 306, 313 (7th Cir. 1988)). A claim

of ineffective assistance of counsel not raised on direct appeal may still be raised in a proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 509 (2003); Richardson v. United States, 379 F.3d 485, 487 (7th Cir. 2004).

## II. Ineffective Assistance of Trial Counsel

To succeed on his claim of ineffective assistance of counsel, Mr. Romero must show, first, that counsel's performance was deficient – "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" – and second, that counsel's deficient performance prejudiced his defense – "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]here is a strong presumption that his attorney performed effectively." Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (*quoting* Strickland v. Washington, 466 U.S. at 694). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence

4

. . . . A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." Eckstein v. Kingston, 460 F.3d at 848 (*quoting* Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

Mr. Romero claims his trial counsel was ineffective because counsel didn't call "material witnesses" to testify that Mr. Romero wasn't involved in the alleged drug conspiracy. "Where a petitioner claims his trial counsel failed to call a witness, he must make a specific, affirmative showing as to what the missing evidence would have been and prove that this witness's testimony would have produced a different result." Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994). Mr. Romero says his trial counsel should have called Gilbert Zabala, a former employee of Mr. Romero's; Antoine Moore, also a former employee; and a third former employee named Recardo. These witnesses, according to Mr. Romero, would have testified that they didn't see drugs stored or drug transactions taking place at Mr. Romero's business. Mr. Romero, though, hasn't provided affidavits or other direct statements from those individuals, and his own self-serving speculation about what their testimony would have been is insufficient. *See* United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be in the form of actual testimony by the witness or on affidavit.").

"The Constitution does not oblige counsel to present each and every witness that is suggested to him. In fact, such tactics would be considered dilatory unless

5

the attorney and the court believe the witness will add competent, admissible, and non-cumulative testimony to the trial record." United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990). Mr. Romero's counsel called Dago Hernandez and Mr. Romero's wife, Lorraine, as defense witnesses. Both Mr. Hernandez and Mrs. Romero testified they never saw Mr. Romero deal drugs. According to Mr. Romero, his three proposed witnesses would have offered that same testimony. Mr. Romero hasn't argued or established that any of the proposed witnesses' testimony would have been admissible or non-cumulative.

"A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997). Mr. Romero hasn't alleged or argued that he provided his counsel with information about the potential witnesses or that he asked counsel to call those witnesses at trial. Mr. Romero "has the burden of supplying sufficiently precise information regarding the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information would have produced a different result." United States v. Farr, 297 F.3d 651, 658-659 (7th Cir. 2002). Mr. Romero hasn't done so. He hasn't presented any evidence to establish that his trial counsel failed to pursue a legitimate trial strategy or that the testimony of any of his proposed witnesses would have changed the outcome of the trial given the government's overwhelming evidence against him.

Mr. Romero's claim of ineffective assistance of trial counsel also contains his discussion of the testimony of various government witnesses. Mr. Romero claims that of the twelve witnesses presented by the government, nine agreed to cooperate with the government in exchange for a reduction in sentence or to avoid prosecution. Mr. Romero also asserts that the witnesses conferred with each other at the detention facility where they were housed. Mr. Romero's attacks on the credibility of those witnesses appears to be a challenge to the sufficiency of the evidence under the guise of an ineffective assistance of counsel claim. "An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996).  Mr. Romero didn't challenge the sufficiency of that evidence on direct appeal, hasn't shown good cause or actual prejudice from not having done so, doesn't assert that the miscarriage of justice exception applies, and so can't rely on a claim relating to the credibility of witnesses as a basis for relief under 28 U.S.C. § 2255.

If, indeed, Mr. Romero is relying on the testimony of the government witnesses he has discussed to establish ineffective assistance of his trial counsel, his argument supports a contrary finding – Mr. Romero's summarization of inconsistencies between witnesses' direct testimonies and their testimonies on

7

cross-examination highlights the more than adequate performance of his trial counsel in challenging witness statements and witness credibility.

Mr. Romero hasn't established that his trial counsel provided ineffective assistance and his claim for relief on this ground must be denied.

### III. Ineffective Assistance of Appellate Counsel

The Sixth Amendment's right to the effective assistance of counsel applies to trial, sentencing, and the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551 (1987). Counsel's performance on appeal is evaluated under the two-part *Strickland* test. Mason v. Hanks, 97 F.3d 887, 892 (7th Cir. 1996). To prevail, Mr. Romero must prove both deficient performance and prejudice. Strickland v. Washington, 466 U.S. at 687-688. An appellate attorney isn't required to "raise every non-frivolous issue under the sun" on appeal. Mason v. Hanks, 97 F.3d at 893. To satisfy the performance prong, Mr. Romero must show that his appellate counsel failed to raise an issue that is obvious and clearly stronger than the issues appealed. Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Prejudice is established only when appellate counsel fails to raise an issue that "may have resulted in a reversal of the conviction or an order for a new trial." Winters v. Miller, 274 F.3d at 1167 (*quoting* Mason v. Hanks, 97 F.3d at 893). "This means there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." Lee v. Davis, 328 F.3d 896, 901 (7th Cir. 2003).

Mr. Romero first claims his appellate counsel should have challenged the sufficiency of the evidence supporting the conspiracy charge. According to Mr. Romero, the government's evidence demonstrates, at best, a buy-sell relationship, so counsel should have challenged the sufficiency of that evidence on appeal. Mr. Romero says appellate counsel's failure to raise the issue "prejudiced Romero as it subjects him to procedural default. Moreover, the claim is viable and could have resulted in relief [if] filed on direct appeal." Petn., at 7. When a claim of ineffective assistance of counsel on appeal is based on the failure to raise viable issues, the reviewing court should "examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." Mason v. Hanks, 97 F.3d at 893 (*quoting* Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

To prove a conspiracy, the government must show more than a series of spot sales: buying and selling drugs, without more, does not constitute a conspiracy. United States v. Thomas, 284 F.3d 745, 752 (7th Cir. 2002). The government doesn't have to prove an explicit agreement or an overt act. "It must merely prove an understanding – explicit or implicit – among co-conspirators to work together to commit the offense." United States v. Curtis, 324 F.3d 501, 505 (7th Cir. 2003); *see also* United States v. Medina, 430 F.3d 869, 881 (7th Cir. 2005) (government must prove "an understanding – explicit or implicit – among co-conspirators to work together to commit the offense"). Proof of a drug conspiracy, rather than a simple buy-sell relationship, "includes evidence of a

9

prolonged and actively pursued course of sales, coupled with the defendant's knowledge of and shared stake in the illegal venture." United States v. Askew, 403 F.3d 496, 502 (7th Cir. 2005). Other considerations include the level of mutual trust and cooperation between the parties, standardized dealings, sales on credit, and the quantity of drugs involved. *Id.*

The government presented more than sufficient evidence of a conspiracy for a rational jury to find guilt beyond a reasonable doubt, and Mr. Romero recounts much of this testimony in his own petition. As Mr. Romero notes, Manuel averred that he purchased five to ten pounds from Mr. Romero on a monthly basis and testified that he and Mr. Romero paid a $30,000 down-payment on a new building for their LowRider shop made up mostly of proceeds from drug sales. Shane Garcia testified that he purchased drugs at the LowRider shop from Mr. Romero and from John Horton, one of Mr. Romero's employees. Charles Ransom testified that for several years prior to his arrest in 2002 he regularly purchased marijuana and cocaine, in varying amounts, and methamphetamine, in one or two pound quantities, from Mr. Romero, as one of his many sources and to turn a quick buck. Richard Freeman testified that he frequented the LowRider shop four to five times weekly and purchased cocaine from Manuel in kilo quantities on many occasions when Mr. Romero was present. Larry Worsham testified that he purchased 10-pound quantities of marijuana from Mr. Romero once or twice a month in 1997-1998 and then began buying cocaine. *See* Petn., at 5A-5G.

Mr. Romero's appellate counsel raised several well-reasoned sentencing issues in light of the then-prevailing uncertainty over federal sentencing law following the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). Mr. Romero hasn't established that the issue not raised – the sufficiency of the evidence – is a "clearly stronger" issue than the sentencing issues raised on appeal, especially in light of controlling Seventh Circuit precedent. *See* United States v. Bowman, 353 F.3d 546, 552 (7th Cir. 2003) ("Although Bowman acknowledges that an appellate court will not review witness credibility or reweigh the evidence, it appears this is what he is requesting us to do. We will not."); United States v. Griffin, 84 F.3d 912, 927 (7th Cir. 1996) ("It is for the jury – not the court of appeals – to judge the credibility of witnesses, and attacks on witness credibility are insufficient to sustain a challenge to the sufficiency of the evidence."); United States v. Ross, 77 F.3d 1525, 1542 (7th Cir. 1996) ("It is not our function to reweigh the evidence, nor to substitute our judgment for that of the factfinder."); *see also* United States v. Stevens, 453 F.3d 963, 965 (7th Cir. 2006) ("Mounting a challenge to the sufficiency of the evidence is so difficult because to be successful, the defendant must show that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); United States v. Gee, 226 F.3d 885, 892 (7th Cir. 2000) (court of appeals views the evidence "in the light most favorable to

11

the government and accept[s] circumstantial evidence as support, even sole support, for a conviction.").

Mr. Romero argues, too, that his appellate counsel provided ineffective assistance when counsel didn't "debate the utility of the limited remand" or argue that the standard of proof relating to the drug quantities involved should have been beyond a reasonable doubt. Petn., at 9. Mr. Romero is wrong on both points. His counsel appealed the issue of the court's use of a preponderance of the evidence standard in enhancing Mr. Romero's offense level based on the quantities of drugs involved and his obstruction of justice. Counsel's raising those issues on appeal led to the limited remand. *See* United States v. Romero, 131 Fed. Appx. 491, 2005 WL 902018 (7th Cir. Apr. 5, 2005). Mr. Romero's counsel then filed a twenty-page sentencing memorandum in which he addressed those same issues, presented a detailed discussion of other factors under 18 U.S.C. § 3553(a) for the court's consideration, and argued that Mr. Romero should receive a lower sentence that the 420-months originally imposed. *See* Defendant Romero's Sentencing Memorandum, filed Jun. 20, 2005 [docket # 82]. Mr. Romero's sentence wasn't reduced by this court, *see* Opinion on Limited Remand, dated July 20, 2005 [docket # 85], or on appeal, *see* United States v. Romero, No. 03-4211, 2005 WL 1992533 (7th Cir. Aug. 18, 2005), but that outcome doesn't establish that his counsel provided ineffective assistance.

"To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice." Winters v. Miller, 274 F.3d 1167.

12

Mr. Romero hasn't done so – he hasn't established that his appellate counsel's performance fell below an objective standard of reasonableness or that he was prejudiced in any way by counsel's performance. His unsupported, summary conclusions to the contrary are insufficient. Mr. Romero isn't entitled to the relief he seeks based on his claim of ineffective assistance of appellate counsel.

### IV.  USE OF SUBORNED PERJURY

Finally, Mr. Romero argues that he is entitled to relief because the government suborned perjured testimony from nine cooperating witnesses. Mr. Romero didn't raise this issue at trial, in a post-trial motion, or on appeal. A petitioner is barred from bringing any constitutional claims which he could have raised on direct appeal absent a showing of good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996); Bontkowski v. United States, 850 F.2d at 313. Moreover, non-constitutional errors, which could have been raised on appeal but were not, are barred on collateral review regardless of cause and prejudice. Bontkowski v. United States, 850 F.2d at 313 (*citing* Kaufman v. United States, 394 U.S. 217 (1969)).

Mr. Romero has shown no good cause for failure to raise this claim on direct appeal. By his own admission, he says he had the evidence he now presents to this court at the time of trial. A petition under § 2255 will not be allowed to do service for an appeal or be used to advance arguments that could have been made

earlier. Reed v. Farley, 512 U.S. 339 (1994); Bontkowski v. United States, 850 F.2d at 312-313. Mr. Romero lost his opportunity to raise this claim and may not do so in his § 2255 petition.

Even if the court were to consider his claim, Mr. Romero couldn't prevail. A petitioner bears the burden of showing, not only that the government used perjured testimony, but that it did so knowingly and there is a likelihood that the false testimony affected the jury's judgment. United States v. Saadeh, 61 F.3d 510, 523 (7th Cir. 1995). Mr. Romero attacks the credibility of the government's witnesses by pointing out inconsistencies in their testimony, but "[m]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Verser, 916 F.2d 1268, 1271 (7th Cir. 1990). Mr. Romero hasn't argued or presented evidence to establish that the government knew of or intentionally used perjured testimony, nor has he provided any argument or support for a finding that any such testimony affected the jury's verdict. Mr. Romero's claim about the use of perjured testimony has no merit, and he isn't entitled to the relief he seeks.

## V. CONCLUSION

Based on the foregoing, Mr. Romero's petition filed pursuant to 28 U.S.C. § 2255 is DENIED.

SO ORDERED.

ENTERED:   May 2, 2008

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court